STEPHEN J. SIMONI
StephenSimoniLAW@Gmail.com
**SIMONI CONSUMERS**
    **CLASS ACTION LAW OFFICES**
c/o Jardim, Meisner & Susser, P.C.
30B Vreeland Road, Ste. 201
Florham Park, NJ 07932
Telephone: (917) 621-5795

*Counsel for Plaintiff*
    *and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

**TRENTON DIVISION**

| | |
|---|---|
| STEPHEN SIMONI, Individually and on behalf of all others similarly situated, | Civ. No. ____ |
| Plaintiff, | **COMPLAINT** |
| vs. | **CLASS ACTION** |
| ALBERTSONS COMPANIES LLC, ALBERTSONS COMPANIES, INC. XYZ TELEMARKETING COMPANY, and DOES 1 through 10, inclusive, | **JURY TRIAL DEMAND** |
| Defendants. | |

**ALBERTSONS PHARMACY ENDANGERS INDIVIDUALS BY
MONOPOLIZING SPACE ON VOICE-MAIL ACCOUNTS WITH
FLU SHOT TELE-MARKETING THAT IS BLASTED NATIONWIDE
VIA ROBO-CALLS TO INDIVIDUALS WHO HAVE NEVER HAD A FLU
SHOT AT ALBERTSONS AND/OR NEVER EVEN PATRONIZED ALBERTSONS**

      Albertsons Companies, Inc. ("**Albertsons**") continues to indiscriminately blast millions of intrusive and expensive Robo-Calls across the country that monopolize

1

voice-mail and answering machine message space to the exclusion of space for urgent communications.  As warned this summer by the senior United States Senator from New York, Charles Schumer, a veritable safety risk occurs because such unsolicited robo-call voicemail messages:

> flood mailboxes, clogging out legitimate messages . . .  God forbid you got a serious message—*someone sick, you need to pick up your kid at school, there's an accident—you wouldn't be able to get to it because there'd be so many of these darned useless solicitations on the phone*. . . .  The head of the FCC is one of these deregulation guys, who says let the companies do whatever they want.

Moore, M. & Trefethen, S., "*Chuck Schumer is fighting back against robocalls*," N.Y. Post, June 25, 2017 (emphases added).

Albertsons' ongoing brazen breaches of the federal telemarketing solicitation law (**"TCPA"**) are particularly egregious in that other pharmacies recently settled similar claims and yet Albertsons continues to violate the TCPA as it apparently recognizes that any damages it may incur constitute the mere incidental—and absolutely worthwhile—cost of illegally generating millions of dollars of sales by repeatedly making expensive, intrusive, and unsafe telephone calls that are explicitly banned by the TCPA.

Shamefully, Albertsons attempts to exploit its dubious status as a HIPAA-compliant health entity by contending that its Robo-Calls merely constitute

2

individualized health messages for the Call Recipients. Albertsons' stratagem, however, is baseless given, *inter alia*, that Call Recipients have complained that they never previously received a flu shot from Albertsons and/or never even patronized an Albertsons.

That Albertsons seeks to disguise an unadulterated advertisement as an essential and individualized health message is evidenced by the Robo-Calls' message, which simply duplicates the same sales pitch that it uses in a printed advertisement disseminated to ***every single individual*** who either enters its supermarkets throughout the United States or accesses the current circular on its website:  "When you think FLU SHOTS think of us!"  Indeed, Albertsons concedes that the Robo-Call is nothing but a non-specific marketing ploy by noting on its website that **"Everyone** should be immunized against the flu."  www.albertsons.com/pharmacy/immunizations/ (emphasis in original).

### ALBERTSONS REFUSES TO AVOID THIS ACTION BY TERMINATING THE ROBO-CALL CAMPAIGN DESPITE MULTIPLE COMPLAINTS LODGED BY CALL RECIPIENTS NATIONWIDE

Countless consumers have made statements on the Internet detailing their frustration with the ongoing Robo-Calls including, *inter alia*:

- Recorded message from Albertsons reminding me to get a flu shot.  ***I've never been to an Albertsons.***

- *I've never gotten a flu shot* and don't intend to.

- I am disturbed that #1, [the] pharmacy is sharing my health information with some 3rd party, and #2, that they are violating the do-not-call order on my phone.

- My problem with that is that *it's August - and flu season is months away*. . . . [I]f you're a senior on Medicare, the shots are free to you, but Medicare pays the dispenser, Albertson's [sic] or Safeway in this case, to administer the shot, *so this is a money-making call*.

http://800notes.com/Phone.aspx/1-800-787-2190 (emphases added).

**ALBERTSONS' REFUSAL TO AVOID THIS
ACTION BY VOLUNTARILY TERMINATING THE
ROBO-CALL CAMPAIGN MEANS THAT IT CONTINUES TO
SEND MARKETING ROBO-CALLS IN BRAZEN VIOLATION OF
CONGRESS'S STATUTORY BAN AND DESPITE ITS KNOWLEDGE
OF MULTIPLE COMPLAINTS LODGED BY CALL RECIPIENTS NATIONWIDE**

Tellingly, Albertsons has rebuffed repeated pre-filing offers to avoid the instant action by voluntarily terminating the ongoing Robo-Call marketing campaign.

Albertsons refuses to terminate the marketing campaign even though Albertsons readily concedes that (i) Consumer never received[1] a flu shot from Albertsons and

---

[1] Pursuant to a narrow exception, some District Court case law appears to permit only flu shot "reminders," i.e., Robo-Calls to *residential* phone lines of Call Recipients who had both (i) received a flu shot from the Caller during the prior flu season and (ii) not yet received one during

4

(ii) Consumer never provided prior written consent to receive telemarketing Robo-Calls at the subject phone number from Albertsons.

Instead, Albertsons contends that it is permitted to send flu shot Robo-Calls to telephone numbers that it appears to have harvested from, *inter alia*, consumers who signed up for an Albertsons "Preferred Savings Card" at Albertsons' supermarkets.  Other complaints, moreover, contend that Call Recipients of the subject Robo-Calls included consumers who **never even entered an Albertsons' establishment**.

If Albertsons' ongoing campaign is permissible, then consumers nationwide will be inundated by similar Robo-Calls from countless pharmacies, hospitals, and healthcare providers who had never previously administered a flu shot to the Call Recipient.  Albertsons stated that Consumer's "understanding of the law [is] erroneous" and that Albertsons' marketing "program ha[d] previously been upheld by the courts," but Albertsons refused to provide reference to any judicial review that in fact encompassed the parameters of the instant Robo-Call campaign and instead simply proclaimed that no further pre-filing discussion would ensue.

---

the current flu season.  Albertsons readily admits these circumstances are absent here.  Calls to residential lines typically cause no charge to the Call Recipient whereas calls to cellular, satellite, and other non-landline numbers typically cause a charge to the Call Recipient——at times as high as several dollars per minute where the Call Recipient's phone is located outside the United States.

Albertsons' continued perpetration of the illegal campaign under these circumstances therefore cries out for the imposition of punitive and treble damages as the only means by which it may be adequately deterred from perpetrating unending—and highly profitable—TCPA violations.

Plaintiff, individually and on behalf of the Class defined below, brings this action for damages, restitution, statutory damages, treble damages, punitive damages, sanctions, interest, court costs, attorneys' fees, and injunctive relief under rights created pursuant to federal statute under 28 U.S.C. section 1331 ("Federal Question" Jurisdiction) for the *ultra vires* illegal actions and deliberate and knowing tortious activity of Defendants Albertsons, XYZ Telemarketing Company, Albertsons Companies LLC, and Does 1 through 10, inclusive (**"Telemarketers"** or **"Company"**), in (i) contacting Plaintiff by a pre-recorded telephone call to his telephone number to solicit purchases of pharmaceutical drugs including vaccinations without prior express written clear and conspicuous consent (**"Sales Calls"**) and/or (ii) failing to provide Plaintiff an automated, interactive voice- and/or key press-activated opt-out mechanism at the outset of the Robo-Call for Plaintiff to immediately terminate the call and prevent further Robo-Calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. section 227 *et seq.* (**"TCPA"**). Plaintiff demands a trial by jury, and complains and alleges as follows:

**INTRODUCTION**

1. Albertsons Companies, Inc. ("**Albertsons**") is a corporation that is incorporated and maintains a principal place of business outside New Jersey and markets and sells prescription pharmaceutical drugs including vaccinations by, among other strategies, placing pre-recorded telephone calls throughout the United States that solicit individuals to go to Albertsons retail establishments to make purchases thereof.  Defendants XYZ Telemarketing Company ("**XYZ**") and Albertsons Companies LLC (Albertsons, Albertsons Companies, LLC, XYZ, and Does 1 through 10, inclusive, collectively, "**Telemarketers**" or "**Company**"), upon information and belief, are entities that contract with Albertsons to solicit sales of prescription pharmaceutical drugs including vaccinations at Albertsons retail establishments.

2. Plaintiff brings this action to challenge the Company's practices in telephone solicitations of purchases.  Specifically, Plaintiff challenges Company's illegal (i) contacting Plaintiff with a pre-recorded message to his telephone number to solicit purchases of pharmaceutical drugs including vaccinations without prior express written clear and conspicuous consent ("**Sales Calls**") and (ii) failing to provide Plaintiff an automated, interactive voice- and/or key press-activated opt-out mechanism at the outset of the Robo-Call for Plaintiff to immediately terminate the call and prevent further Robo-Calls.

3.   All of the claims asserted herein arise out of Company's illegal telephone solicitation campaign and are a common fact pattern as to each member of the Class defined below.

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1332(d).  This is a proposed class action involving more than one hundred (100) class members, at least one member of the putative class is a citizen of a state different from Defendants, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.  This Court has jurisdiction over the Company in this action because it solicits, sells, and administers pharmaceutical medications including vaccinations throughout New Jersey.

5.   Venue is proper in this judicial district pursuant to 28 U.S.C. section 1391(b) and (c) in that Company solicits, sells, and administers pharmaceutical medications including vaccinations within the District of New Jersey.

## THE PARTIES

6.   Plaintiff ("**Plaintiff**") is an adult male who resides outside Delaware and Idaho.

7.   Defendant Albertsons is a corporation that is incorporated and maintains its headquarters outside New

Jersey. Defendant XYZ, upon information and belief, is a corporation.

8. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 1 through 10, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

9. At all times herein mentioned, Albertsons, XYZ, and the Doe Defendants (collectively, **"Telemarketers"** or **"Company"**), and each of them, were an agent or joint venturer of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

10. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would

substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

11. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

**FACTUAL ALLEGATIONS**

12. In or about October 2017, Plaintiff received a pre-recorded telephone solicitation to purchase a pharmaceutical medication including an influenza vaccination ("flu shot") from Telemarketers to Plaintiff's cellular telephone number (917) 621-5795. Plaintiff at no time ever obtained a flu shot from Albertsons.

13. Plaintiff had not provided prior express written clear and conspicuous consent to receive pre-recorded telephone solicitations from Telemarketers. Plaintiff may have provided his telephone number to Albertsons only as required for the activation and receipt of an Albertsons' "Preferred Savings Card" bearing the number 48602055737.

14. These unsolicited telephone calls were placed for purposes of selling pharmaceutical medications including vaccinations at Albertsons retail establishments.

15. These telephone solicitations constituted "calls" under the TCPA that were ***not*** for emergency purposes.

16. Plaintiff did ***not*** provide any one, more, or all Defendants, nor any agent of Defendants, prior express written clear and conspicuous consent to cause Plaintiff to receive pre-recorded telemarketing calls on his telephone number.

17. Telemarketers' Sales Call did ***not*** provide an automated, interactive voice- and/or key press-activated opt-out mechanism at the outset of the Robo-Call for Plaintiff to immediately terminate the call and prevent further Robo-Calls.  The telephone Sales Calls violated the TCPA in multiple respects.

18. Upon information and belief, Defendants illegally harvested Plaintiff's telephone number from, *inter alia*, Albertsons' "Preferred Savings Card" registration record, pharmaceutical medication purchase records, and/or other impermissible sources.

19. Countless consumers have made statements on the Internet detailing their frustration with the ongoing Robo-Calls including, *inter alia*:

- Recorded message from Albertsons reminding me to get a flu shot.  ***I've never been to an Albertsons.***

- ***I've never gotten a flu shot*** and don't intend to.

- I am disturbed that #1, [the] pharmacy is sharing my health information with some 3rd party, and #2, that they are violating the do-not-call order on my phone.

11

> • My problem with that is that ***it's August - and flu season is months away***. . . . [I]f you're a senior on Medicare, the shots are free to you, but Medicare pays the dispenser, Albertson's [sic] or Safeway in this case, to administer the shot, ***so this is a money-making call***.

http://800notes.com/Phone.aspx/1-800-787-2190 (emphases added).

20. 47 C.F.R. § 64.1200(b)(3) requires "[i]n every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, ***within two (2) seconds of providing the identification information required in [paragraph (b)(1)](#) of this section.*** When the called person elects to opt out using such mechanism, the mechanism, must automatically record the called person's number to the seller's do-not-call list ***and immediately terminate the call***. . . ."  (emphases added).

21. The base statutory penalty for this violation is $500 per violation, which may be trebled in the discretion of the court up to $1,500 per violation if Defendants' violation was willful or knowing.  47 U.S.C. § 227(b)(3).

12

Plaintiff alleges that Defendants' TCPA violations were willful and knowing particularly where other pharmacies already settled similar TCPA claims.

22. 47 C.F.R. § 64.1200(d)(2) states that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."

23. Because of the numerous violations Defendants committed with regard to do-not-call regulations, it is clear that Defendants have failed to adequately inform and train their employees in the existence and use of the do-not-call list.  The base statutory penalty for this violation is $500 per violation, which may be trebled in the discretion of the court up to $1,500 per violation if Defendants' violation was willful or knowing.  47 U.S.C. § 227(b)(3).  Plaintiff alleges that Defendants' violation of 47 C.F.R. § 64.1200(d)(2) was willful and knowing, within the meaning of 47 U.S.C. § 227(b)(3) and 47 U.S.C. § 312(f)(1).

**CLASS ACTION ALLEGATIONS**

24. Plaintiff brings this action on behalf of himself and all persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of each of those provisions. The Class is defined as follows:

> All individuals who within the past four years received one or more pre-recorded telemarketing calls to a telephone number (i) without prior express written clear and conspicuous consent and/or (ii) without being provided an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to immediately terminate the call at the outset and make a do-not-call request. Excluded from the Class are: (1) individuals who both (a) had received a flu shot from Albertsons during the flu season immediately preceding when the subject calls were received and (b) had not yet received a flu shot from Albertsons during the flu season in which the subject calls were received; (2) employees of the Defendants, including their officers or directors; (3) Defendants' affiliates, subsidiaries, or co-conspirators; and (4) the Court to which this case is assigned.

25. Plaintiff does not know the exact number of Class members because such information is in the exclusive

control of the Defendants.  However, Plaintiff believes that due to the nature of the trade, commerce, and nearly universal use of pharmaceutical drug vaccines, Class members are sufficiently numerous, most likely millions of consumers, and geographically dispersed throughout the United States, and that joinder of all Class members is impracticable.  In fact, Albertsons repeats the content of the robo-calls in printed advertisements disseminated to ***every single individual*** who either enters its stores throughout the United States or accesses the current circular on its website.  The information as to the identity of the Class members can be readily determined from records maintained by the Defendants, because telephone calls are recorded in Defendants' billing statements provided by third-party communications carriers, as well as from general public notification.

26.  Plaintiff's claims are typical of, and not antagonistic to, the claims of the other Class members because Plaintiff was injured by Defendants' practices and by asserting his claims, Plaintiff will also advance the claims of all members of the Class who were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

27.  The common legal and factual questions which do not vary from Class member to Class member, and which may be determined without reference to individual circumstances

of any Class member, include, but are not limited to, the following:

    a. Did Defendants' Sales Calls violate the TCPA?

    b. What is the appropriate measure of damages for Defendants' TCPA violations?

    c. Was Company unjustly enriched by the challenged practices? and

    d. Are Plaintiff and the Class Members entitled to the injunctive and equitable relief requested herein?

28. These common questions and others predominate over questions, if any, that affect only individual members of the Class.

29. The claims of the representative Plaintiff are typical of the claims of the Class. There are no material conflicts with any other member of the Class that would make class certification inappropriate. Plaintiff and counsel will fairly and adequately represent the interests of the Class.

30. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts if individual litigation of numerous cases would proceed. By contrast, the conduct of this action as a class action,

with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

31. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

32. Injunctive relief is appropriate as to the Class as a whole because Defendants have acted or refused to act on grounds generally applicable to the Class.

33. Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including, but not limited to, providing Class members with a method for the redress of claims that may otherwise not warrant individual litigation.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
(Violations of the TCPA "Sales Call"
Prohibition, 47 U.S.C. sec. 227 et seq.)

34. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

35. As a result of Defendants', and Defendants' agents, violations of the TCPA, Plaintiff seeks for himself

and each Class Member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. sec. 227(c)(3)(F).

36. Pursuant to 47 U.S.C. sec. 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### SECOND CAUSE OF ACTION
(Knowing and/or Willful Violations of the TCPA "Sales Call" Prohibition, 47 U.S.C. sec. 227 et seq.)

37. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

38. As a result of Defendants', and Defendants' agents, knowing and/or willful violations of the TCPA, Plaintiff seeks for himself and each Class Member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. sec. 227(c)(5).

39. Treble damages are particularly appropriate where other pharmacies already settled similar TCPA claims.

40. Pursuant to 47 U.S.C. sec. 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**PRAYER FOR RELIEF**

1. Certification of the proposed Class and notice and claims administration to be paid by Defendants;

2. Statutory damages;

3. Compensatory, general, incidental, and consequential damages according to proof;

4. Special damages according to proof;

5. Punitive damages to punish Defendants for their willful illegal and deliberate tortious conduct and to deter others who may otherwise engage in similar willful illegal and deliberate tortious conduct;

6. Restitution and disgorgement according to proof;

7. Injunctive relief against Defendants, and each of them, to prevent future wrongful conduct;

8. Prejudgment interest at the maximum legal rate;

9. Costs of the proceedings herein;

10. Reasonable attorneys' fees; and

11. All such other and further relief as the Court deems just.

Dated:  Dec. 1, 2017             Respectfully submitted,

                                 By: _/s/_Stephen J. Simoni_
                                     STEPHEN J. SIMONI
                                 StephenSimoniLAW@gmail.com
                                 **SIMONI CONSUMERS**
                                   **CLASS ACTION LAW OFFICES**
                                 c/o Jardim, Meisner &
                                     Susser, P.C.
                                 30B Vreeland Road, Ste. 201
                                 Florham Park, NJ 07932
                                 Telephone:  (917) 621-5795

                                 *Counsel for Plaintiff and
                                     the Proposed Class*

**DEMAND FOR JURY TRIAL**

Plaintiff on behalf of himself and all others similarly situated hereby requests a jury trial on all claims so triable.

Dated:  Dec. 1, 2017            Respectfully submitted,

                                By: _/s/_Stephen J. Simoni_
                                    STEPHEN J. SIMONI